IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AIR MARSHAL ASSOCIATION : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 22-2254 |
| SECRETARY OF THE DEPARTMENT OF : | |
| HOMELAND SECURITY et al. : | |

**SURRICK, J.**                                                                                   **FEBRUARY 4, 2025**

**MEMORANDUM**

On June 6, 2022 Plaintiff Air Marshal Association ("Plaintiff" or "AMA") filed a Complaint asserting claims against Defendants U.S. Department of Homeland Security ("DHS"), Transportation Security Administration ("TSA"), Federal Air Marshal Service ("FAMS") (together, "Agency Defendants"), and Richard F. Altomare (collectively, "Defendants"). The Complaint alleges that Defendants engaged in retaliatory and harassing conduct that interferes with the First Amendment and contractual rights of the AMA and its members. Presently before the Court are the Agency Defendants' and Defendant Altomare's Motions to Dismiss. (ECF Nos. 10, 11.)

For the following reasons, Defendants' Motions to Dismiss are granted in part and denied in part. We will dismiss claims against Defendant Altomare individually due to ineffective service of process, and we will substitute the United States Government in place of Defendant Altomare with respect to the contractual interference claim. We will deny the Motions as to Plaintiff's First Amendment and contractual interference claims (Counts I & III) to the extent the AMA seeks non-monetary relief on behalf of itself and its members against the Agency Defendants, but we will

grant Defendants' Motions to the extent Plaintiff seeks monetary damages with respect to those Counts. We will also dismiss Plaintiff's unfair labor practices and civil conspiracy claims (Counts II & IV).

I.  BACKGROUND

AMA is a "labor organization" with a principal purpose of representing the interests of non-supervisory federal air marshals employed by the TSA, which is an agency within DHS. (Compl., ECF No.1, ¶¶ 4, 12.) "AMA is the sole labor organization exclusively representing Federal Air Marshals and the recognized advocate of the workgroup with respect to matters of importance to them pertaining to conditions of employment as well as constitutionally and statutorily protected benefits of their federal service." (*Id.* ¶ 14.) AMA's membership consists of more than half of current and former active-duty federal air marshals. (*Id.*)

The Complaint alleges that "TSA management has consistently failed to work cooperatively and respectfully with the AMA and its members" and that management "interfered with the relationship between AMA and its members." (*Id.* ¶ 15.) Plaintiff further alleges that management of the Philadelphia Field Office of FAMS retaliated against members of AMA because of "whistleblower activity" and targeted members of AMA with verbal abuse, disciplinary proceedings, and other harassing behavior to weaken and diminish AMA. (*Id.* ¶ 16.) Plaintiff also recounts the initiation of a new policy under which "FAMs and AMA members were directed not to attempt to utilize earned sick leave or personal time for medically required appointments and/or surgeries[,]" and one instance in which two managers requested that an air marshal reschedule a cancer-related surgery. (Compl. ¶ 17.)

Plaintiff claims that it submitted numerous letters to FAMS and TSA management regarding these issues and other grievances, which were ignored. (*Id.* at ¶¶ 18-26.) One letter

2

chronicled how "individual FAMs, primarily AMA members, had their performance evaluations intentionally and artificially lowered and adjusted down." (*Id.* ¶ 20.) Another letter noted that "selective targeting of AMA members had been allowed to continue without proper redress" and "pointed out specific examples of AMA members being targeted." (*Id.* ¶ 21.)

Plaintiff claims that TSA and FAMS officials, including Defendant Altomare, ignored letters and requests for information from AMA and its lawyers regarding a wide range of grievances. (*Id.* ¶¶ 18-26.) AMA asserts claims on behalf of itself and its members for violations of the First Amendment (Count I), Unfair Labor Practices (Count II), Intentional Interference with Contractual Relations (Count III), and Civil Conspiracy (Count IV). AMA seeks injunctive and declaratory relief (in Counts V & VI, respectively), as well as monetary damages.

## II.   LEGAL STANDARD

### A.   Fed. R. Civ. P. 12(b)(1): Lack of Subject-Matter Jurisdiction

To adjudicate a case, a federal court must have subject matter jurisdiction. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986). A court must grant a motion to dismiss if it lacks subject matter jurisdiction over the case. Fed. R. Civ. P. 12(b)(1). The party asserting that jurisdiction is proper bears the burden of showing that jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a factual or facial attack. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "A factual attack ... is an argument that there is no subject matter jurisdiction because the facts of the case ... do not support the asserted jurisdiction." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). On a factual attack, the "court may weigh and consider evidence outside the pleadings." *Const. Party of Pennsylvania*,

757 F.3d at 358 (quoting *Gould Elecs. Inc v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). A facial challenge "contests the sufficiency of the pleadings" and the court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough Corp.*, 678 F.3d at 243 (quoting *Gould Elec. Inc.*, 220 F.3d at 176).

      **B.**      **Fed. R. Civ. P. 12(b)(6): Failure to State a Claim Upon Which Relief Can be Granted.**

"[A] plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face'" to survive a motion to dismiss pursuant to Rule 12(b)(6). *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint has facial plausibility when there is enough factual content 'that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When considering the sufficiency of a complaint on a 12(b)(6) motion, a court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). The court should also consider the exhibits attached to the complaint and matters of public record. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

A complaint that merely alleges entitlement to relief, without alleging facts that show such an entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A complaint

4

must contain "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id.* at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

### C. Fed. R. Civ. P. 12(b)(5): Insufficient Service of Process

Federal Rule of Civil Procedure 12(b)(5) allows a defendant to move to dismiss a complaint based on insufficient service of process. When a motion to dismiss is filed pursuant to Fed. R. Civ. P. 12(b)(5), "the party making the service has the burden of demonstrating its validity when an objection to the service is made." *Suegart v. U.S. Customs Serv.*, 180 F.R.D. 276, 278 (E.D.Pa. 1998). "That party must do so by a preponderance of the evidence using affidavits, depositions, and oral testimony." *Fortes v. Boyertown Area Sch. Dist.*, No. 12-6063, 2014 WL 3573104, at *3 (E.D. Pa. July 18, 2014). A dismissal for insufficient service of process under Rule 12(b)(5) must be granted without prejudice. *Umbenhauer v. Woog,* 969 F.2d 25, 30 n.6 (3d Cir. 1992) (citing *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.1944)).

## III. DISCUSSION

### A. Plaintiff Has Not Effectuated Adequate Service of Process on Richard Altomare in an Individual Capacity.

Plaintiff's claims asserted against Defendant Altomare personally must be dismissed for lack of personal jurisdiction because AMA's service of process is insufficient. Fed. R. Civ. P. 12(b)(5). To sue an individual federal employee, a plaintiff must properly serve both the employee, personally in an individual capacity, and the United States. *See* Fed. R. Civ. P. 4(i)(3) &

4(i)(1)(A)-(B). The party asserting the validity of service bears the burden of proof on the issue. *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993).

Federal Rule of Civil Procedure 4(e) governs the procedures for serving an individual within the United States. This sub-section provides that an individual may be served by delivering a copy of the summons and complaint "to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(c). A plaintiff bears the burden of establishing an agency relationship between the defendant and the purported agent. *Parikh v. Twp. of Edison*, No. 08-3300, 2009 WL 5206011, at *8 (D.N.J. Dec. 29, 2009). In addition, while good faith reliance on the apparent authority of an individual to receive service may satisfy the requirements of Rule 4(e)(2)(c) under certain circumstances, any apparent authority must stem from the actions of the defendant rather than from the purported agent. *See Laffey v. Plousis*, No. 05-2796, 2008 WL 305289, at *5 (D.N.J. Feb. 1, 2008), *aff'd*, 364 F. App'x 791 (3d Cir. 2010); *see also Jumpp v. Jerkins*, No. 08-6268, 2010 WL 715678, *18 (D.N.J. Mar. 1, 2010).

Here, Plaintiff first submitted an affidavit of service on August 16, 2022, stating that Richard Altomare had been served via certified mail, which is not an adequate means of service where a federal officer or employee is sued individually. *Compare* (ECF No. 7) *with Micklus v. Carlson*, 632 F.2d 227, 240-41 (3d Cir. 1980) (service by certified mail or to defendant's work is insufficient to establish jurisdiction over federal employee sued personally). Attached to its Opposition Brief, Plaintiff submitted another affidavit regarding service on Richard Altomare, but that affidavit only demonstrates service on an individual named Gerard J. Sper on September 15, 2022. (Opp. Mem., Ex. B, ECF No. 16-2, at 2.) Plaintiff has not submitted satisfactory evidence to show that Mr. Sper was an authorized agent for Defendant Altomare, or other facts about Defendant Altomare's conduct that would permit a finding that service was adequate based on

apparent authority.  (*Id.*; *see also* Opp. Mem., ECF No. 16, at 21.)  We therefore dismiss claims asserted against Defendant Altomare in an individual capacity for insufficient service of process.

**B.     COUNT I:  First Amendment Violations.**

Plaintiff claims that "Defendant retaliated against Plaintiff and its members for exercising their protected First Amendment rights to freedom of speech and of association," as well as "due process of law" under the Fourteenth Amendment.  (Compl., ¶¶ 29, 32.)

   **1.     Section 1983 Claim.**

Count I is titled "First Amendment Violations, [42] U.S.C. § 1983," but Section 1983 does not apply to persons acting under color of federal law.  *Lopez v. DOJ*, No. 07-3230, 2007 WL 2988580, *1 (3d Cir. Oct. 15, 2007) ("Section 1983 is inapplicable to persons acting under color of federal law").  *Smeltz v. Mayorkas*, a case from the Middle District of Pennsylvania, provides useful guidance.  No. 23-636, 2024 WL 4289898 at *8-9 (M.D. Pa. Sept. 25, 2024).  There, the Middle District explained that to establish a claim under Section 1983, "the conduct complained of must have been committed by a person acting under color of state law" and "deprive[d] the plaintiff of rights secured under the Constitution or federal law."  *Id.*  Since Smeltz's allegations were based on "conduct of Federal Air Marshals and administrators within the FAMS Philadelphia Field Office" who were "federal actors," the Middle District found it implicated only actions taken "under color of federal law" such that Section 1983 liability did not attach.  *Id.*  Here, we likewise find that Section 1983 liability cannot attach because AMA's allegations refer to conduct taken under color of federal law.  *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (finding Section 1983 creates a remedy to redress a deprivation of a federally protected right

by a person acting under color of state law but is inapplicable to persons acting under color of federal law).[1]

### 2. Whether Plaintiff's First Amendment Claims Are Otherwise Barred by Sovereign Immunity.

Since Section 1983 does not provide a cause of action for the conduct alleged here, Defendants argue that Plaintiff's constitutional claims are barred by the doctrine of sovereign immunity. (*See* Fed. Ag. MTD Mem., ECF No. 10, 4-8.) "To unlock the courthouse door and sue the federal government, a plaintiff needs two keys. He must have a cause of action so he can invoke the power of the courts to remedy his injury. And Congress must have waived sovereign immunity for the specific remedy he seeks." *Doe 1 v. United States*, 37 F.4th 84, 86 (3d Cir. 2022) (citations omitted). In a case against the federal government or its agencies, a plaintiff must "identify a specific statutory provision that waives the government's sovereign immunity from suit." *Clinton Cty. Comm'rs v. U.S. EPA*, 116 F.3d 1018, 1021 (3d Cir. 1997). Therefore, the AMA must identify an applicable waiver of sovereign immunity for the claim to survive.

In Opposition, the AMA refers to the Federal Tort Claims Act ("FTCA" or "Westfall Act"), 28 U.S.C. §§ 1346, 2671-2680, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, as waivers of sovereign of immunity. (*See* Opp. Mem., at 5, 10-11.) Although the FTCA permits

---

[1] Likewise, the Fourteenth Amendment's due process clause specifically addresses "state action" and does not apply to the federal government, so Plaintiff cannot rely on the Fourteenth Amendment to reach the Defendants, who are federal actors. *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001) (affirming grant of motion to dismiss Fourteenth Amendment claim against purported federal actors). Even if Plaintiff had framed its claim as proceeding under the Fifth Amendment, this would make no difference, as Plaintiff has not alleged sufficient facts to make out a due process claim under the Fifth Amendment. *See Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007) (stating that "[t]o have a property interest in a benefit" a person must show "a legitimate claim of entitlement to it.") (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Similarly, although AMA's Complaint refers in passing to 42 U.S.C. §§ 1981, 1988, these provisions do not waive sovereign immunity as to claims against the federal government. *See Gary v. New Jersey Dep't of Consumer Affs. Off. of Consumer Prot.*, No. 10-3686, 2012 WL 993640, at *4 (E.D. Pa. Mar. 26, 2012), *aff'd sub nom. Gary v. F.T.C.*, 526 F. App'x 146 (3d Cir. 2013) (collecting cases finding that suits against the United States under civil rights statutes such as 42 U.S.C. §§ 1981 and 1988 are barred by sovereign immunity).

suit against the federal government for certain tort claims for damages, it does not provide a cause of action for constitutional violations. *See Dippolito v. United States*, 704 Fed. App'x 199, 204 n.6 (3d Cir. 2017) (explaining that a constitutional tort is not cognizable under the FTCA) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78 (1994)).[2] Plaintiff alternatively argues that Section 702 of the APA provides a waiver of sovereign immunity with respect to claims for declaratory and injunctive relief. (Opp. Mem., at 10-11.) The relevant provision of the APA, Section 702, provides in part:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.

Defendants respond that the APA's limited waiver of sovereign immunity under this section extends only to challenges for particular types of "agency action," 5 U.S.C. § 702, such as "agency-issued rules, orders, licenses, sanctions, or relief." (Ag. Def. Reply, ECF No. 17, at 12.) However, in *Treasurer of N.J. v. United States Dep't of Treasury* the Third Circuit considered and rejected this argument. 684 F.3d 382, 397-98 (3d Cir. 2012). Reviewing the state of the law in other circuits, the Third Circuit found that the sovereign immunity waiver in section 702 "extends to all nonmonetary claims against federal agencies and their officers, regardless of whether or not the cases seek review of 'agency action' or 'final agency action' as set forth in section 704." *Id.*

---

[2] Plaintiff also concedes that it "has not brought a *Bivens* action." (Opp. Mem., at 22.) Even if it had, we are not aware of courts applying *Bivens* against federal agencies nor in the First Amendment context. *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971); *see also Wilkie v. Robbins*, 127 S. Ct. 2588, 2598 (2007) ("[w]e have seen no case for extending Bivens to claims against federal agencies …"); *Taggart v. United States Dep't. of Just.*, No. 16-4040, 2017 WL 1862324, at *2 (E.D. Pa. May 9, 2017) (declining to extend *Bivens* in the context of Plaintiff's First Amendment retaliation claim and dismissing same to the extent it sought monetary relief); *see also Egbert v. Boule*, 596 U.S. 482, 486 (2022) (finding that the *Bivens* remedy should not be extended "in all but the most unusual circumstances.").

at 397. Therefore, while the doctrine of sovereign immunity bars AMA from seeking monetary damages under the First Amendment, AMA has identified an applicable waiver of sovereign immunity to the extent it seeks nonmonetary relief for First Amendment violations. Although Plaintiff did not expressly plead Section 702 of the APA in the Complaint, we decline to dismiss on this basis since the allegations in the Complaint otherwise support jurisdiction. *See Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 446 (D. Del. 2006) (declining to dismiss claim even though "Plaintiff did not expressly plead Section 702 in his Amended Complaint").

      **C.     COUNT II: Prohibited Unfair Labor Practices.**

Count Two of the Complaint asserts claims against Defendants under the Federal Service Labor-Management Relations Act ("FSLMRA"), 5 U.S.C. §§ 7101–7135, and Pennsylvania's Public Employee Relations Act, 43 P.S. §§ 1101.101–1101.2391.

The FSLMRA provides that if a union is the recognized exclusive representative of a federal agency's employees, the agency must negotiate with that union over the employees' conditions of employment. *See* 5 U.S.C. §§ 7114, 7117. However, as part of this statutory framework, Congress authorized the President to exclude "any agency or subdivision thereof from coverage" upon finding: (i) that "the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work" and (ii) that "the provisions of this chapter cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations." 5 U.S.C. § 7103(b). Under this provision, in 2008 President Bush issued Executive Order 13480, 73 Fed. Reg. 73991, which amended Executive Order 12171, 44 Fed. Reg. 66565, by adding "[t]he Office of Law Enforcement/Federal Air Marshal Service" within "the Transportation Security Administration" as a sub-agency for which

the provisions of the FSLMRA were "suspended."[3]  As the FAMS is exempt from the FSLMRA, the AMA has no actionable claim under this statute.

Plaintiff's claim under Pennsylvania's Public Employee Relations Act, 43 P.S. 1101, *et seq.*, is also dismissed because the term "public employer" as defined in 43 P.S. § 1101.301(1) does not include the federal government or its agencies.  Since Defendants do not fall within the scope of Pennsylvania's Public Employee Relations Act, we do not reach Defendants' alternative argument that the Supremacy Clause forecloses this claim.  (Fed. Ag. MTD., ECF No. 10 at 13.)

### D.   COUNT III:  Intentional Interference with Contractual Relations.

Plaintiff's Complaint alleges that Defendants interfered with the contractual relationship between AMA and its members.  (Compl. ¶¶ 42-49.)  To the extent Plaintiff raises this claim against Defendant Altomare in an individual capacity, we substitute the United States as Defendant under the FTCA's provision regarding certification and substitution.  With respect to sovereign immunity, the United States has not waived immunity under the FTCA as to claims for damages based on contractual interference but has waived immunity with respect to Plaintiff's claim for non-monetary relief in Section 702 of the APA.

#### 1.   Attorney General Certification under FTCA.

The FTCA provides that, upon the Attorney General's certification that an employee was acting within the scope of employment in relation to conduct underlying a civil action, the United States shall be substituted as the defendant.  28 U.S.C. § 2679(d)(1); *see also Aviles v. Lutz,* 887 F.2d 1046, 1048 (10th Cir.1989) (applying § 2679 to claim for tortious interference with employment rights); *Vanover v. Hangman*, 77 F. Supp. 2d 91, 97 (D.D.C. 1999) ("Substitution of

---

[3] Subsequent Executive Orders 13741, 81 Fed. Reg. 68289, and 13760, 82 Fed. Reg. 5325, which further amend the original Executive Order 12171, have not rescinded this exemption.

the United States is mandatory even if the tort claim is one of those for which the government has not waived its sovereign immunity.") *aff'd* 38 F. App'x 4 (D.C. Cir. 2002).

Where the Attorney General has certified that a federal official was acting within the scope of employment with respect to alleged tortious conduct,[4] the burden is on the plaintiff to rebut by pleading facts sufficient to show the employee acted beyond the scope of employment. *Sharratt v. Murtha*, 437 Fed. App'x 167, 172 (3d Cir. 2011). Once certified according to this process, "[t]he United States … must remain the federal defendant in the action unless and until the District Court determines that the employee, *in fact,* and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Osborne v. Haley*, 549 U.S. 225, 231 (2007). Here, the United States Attorney for the Eastern District of Pennsylvania has certified that "Richard F. Altomare … was acting within the scope of his federal office or employment at the time of the alleged incidents out of which the Plaintiff's claims arose." (Certification, ECF No. 11, at 30.)

Accepting the Complaint's factual allegations as true and drawing all reasonable inferences in favor of Plaintiff, we conclude that Plaintiff has not pled any facts indicating that Altomare was acting beyond the scope of his employment. Plaintiff's allegations center on conduct related to an earned sick leave policy, concerns about "performance evaluations," "work threats," and "personnel procedures." (*See, e.g.,* Compl., ¶¶ 17-18.) Moreover, besides noting in passing that Plaintiff brought its claims against Altomare "as an individual," Plaintiff does not otherwise rebut the United States certification. In accordance with the FTCA's certification procedure, we

---

[4] The Attorney General has delegated certification authority to the U.S. Attorneys. *See* 28 U.S.C. § 510; 28 C.F.R. § 15.3.

12

therefore substitute the United States for Richard Altomare as the defendant with respect to Plaintiff's tort claims.

### 2. Whether the United States Has Waived Sovereign Immunity for Contractual Interference Claims.

Intentional interference with contractual relations is a common law tort, and the United States has waived sovereign immunity with respect to certain common law tort claims under the FTCA. 28 U.S.C. §§ 1346(b)(1), 2671-80. However, in 28 U.S.C. § 2680(h), Congress expressly excepted "interference with contract rights" from the FTCA's waiver of sovereign immunity, thereby depriving federal courts of subject matter jurisdiction over such claims against federal defendants. *See Dupree v. United States*, 264 F.2d 140, 141-44 (3d Cir. 1959) (no waiver of sovereign immunity for claims of interference with existing contracts); *Small v. United States*, 333 F.2d 702, 704 (3d Cir. 1964) (no waiver of sovereign immunity for claims of interference with prospective contracts); *see also Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1154-55 (D.C. Cir. 1985) (finding § 2680(h) precludes claims based on interference with a plaintiff's economic or contractual relationships with third parties, whether preexisting or prospective). The United States and its agencies therefore retain sovereign immunity with respect to contractual interference claims for damages, which are dismissed for lack of subject matter jurisdiction.

However, the AMA may still proceed with the contractual interference claim to the extent it seeks non-monetary relief under Section 702 of the APA. *See U.S. Info. Agency v. Krc*, 989 F.2d 1211, 1216 (D.C. Cir. 1993) (stating that "the FTCA specifically bars money damages as a remedy for Krc's claim, which by parity of reasoning implies that injunctive relief is available."); *accord Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("[FTCA] language, providing for preclusion of actions 'for money damages'[,] logically implies that an action for injunctive or declaratory relief would not be precluded."). As previously discussed, Section 702 of the APA

13

provides a waiver of sovereign immunity with respect to claims for declaratory and injunctive relief. Moreover, the Third Circuit has found that Section 702 permits equitable relief against the federal government for claims based both on federal law and state law (as applicable here). *See Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d at 389-90, 400 n.19 (permitting New Jersey's claim against the Treasury under that state's unclaimed property acts while rejecting "the distinction that the Government makes between federal and state law in either the text or the history of section 702.")*; accord Gilmore v. Weatherford*, 694 F.3d 1160, 1166 n.1 (10th Cir. 2012) (Gorsuch, J., on panel) (explaining "[w]hether plaintiffs' claims arise under the APA or common law is [] immaterial with respect to the sovereign immunity analysis[,]" because "[u]nder 5 U.S.C. § 702, the United States waives sovereign immunity as to [such] actions"); *see also Texas v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 200 (5th Cir. 2024) (finding that Section 702's "text does not suggest it excludes state or common law claims.").

    E.  **COUNT IV: Civil Conspiracy Against All Defendants.**

Plaintiff's civil conspiracy claims are precluded under Supreme Court precedent, which establishes that "there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for the entity." *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017). Under this principle—sometimes called the intra-corporate-conspiracy doctrine—an agreement between or among agents of the same legal entity acting in their official capacity is not an unlawful conspiracy. *See id.* ("Conspiracy requires an agreement … between or among two or more separate persons," but [w]hen two agents of the same legal entity make an agreement in the course of their official duties, … their acts are attributed to their principal.") The Supreme Court explained that this doctrine precludes a claim of conspiracy "between or among officers in the same branch of the government (the Executive Branch) and in

the same Department[.]" *Id.* at 152. Likewise, Pennsylvania state law follows the intra-corporate conspiracy doctrine, under which "[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." *Grose v. Procter & Gamble Paper Prods.*, 866 A.2d 437, 441 (Pa. Super. 2005) (citing *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (1979)).

As applied to Plaintiff's Complaint, this doctrine precludes any claim of a civil conspiracy between or among DHS (an Executive Branch Department), TSA (a DHS component), FAMS (a TSA component), and Defendant Altomare (an employee of FAMS). *Compare* (Compl. ¶¶ 4, 12, 50-56) *with Ziglar v. Abbasi*, 582 U.S. at 151.

### F. Associational Standing.

Defendants further argue that if any of Plaintiff's claims survive their Motions to Dismiss, these claims should also be dismissed for lack of standing to the extent they are brought on behalf of AMA's individual members. (Fed. Ag. MTD Mem., at 18.)

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *N.J. Coal. of Auto. Retailers, Inc. v. Mazda Motor of Am., Inc.*, 957 F.3d 390, 392 (3d Cir. 2020) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Defendants argue that because "no individuals have sued in their own names, and AMA fails to identify any members who have suffered harm based on the claims asserted in the Complaint," AMA "may not sue on behalf of any individuals." (Fed. Ag. MTD Mem., at 18.) Plaintiff responds that it did not identify specific individuals because the names of federal air

15

marshals is sensitive information such that disclosure "may compromise national security or endanger that individual's personal safety[.]" (*See* Opp.. Mem., at 18; *see also* Compl. ¶ 5.) Considering these concerns, Plaintiff has adequately identified certain members of the AMA for associational standing purposes at this stage of the litigation.

In addition, since Plaintiff has not established any waiver of sovereign immunity regarding claims for monetary damages, we do not reach whether the AMA has standing as an organization to sue for damages on behalf of its members.

At this stage of litigation, we will not dismiss Plaintiff's surviving claims—i.e., First Amendment and contractual interference claims for non-monetary relief—to the extent they are brought on behalf of individual members of AMA.

### G. Declaratory And Injunctive Relief.

Defendants argue that Plaintiff's claims for declaratory and injunctive relief fail for several reasons. First, Defendants contend that these claims fail because "[they] are remedies, not independent causes of action" and all underlying claims are barred by sovereign immunity. (Fed. Ag. MTD Mem., at 18.) Taking the Plaintiff's allegations as true and drawing all inferences in AMA's favor, we construe the Complaint as seeking declaratory and injunctive relief with respect to Plaintiff's First Amendment and contractual interference claims. (*See, e.g.,* Compl. ¶ 70 (seeking declaration allowing AMA to "represent its members without interference, retaliation, intimidation, and/or unlawful personnel action as a causal result of the membership.")) In addition, Section 702 of the APA provides a waiver of sovereign immunity as to non-monetary relief. (*See supra* at Section III.B.2 and Section III.D.2.)

Defendants also argue that Plaintiff fails to state a prima facie case for injunctive relief since it contains "no allegation of a serious risk of future irreparable harm," and that a declaratory

judgment would similarly merely "adjudicate past conduct." (*Id.* at 19.) We likewise reject these arguments and find that, accepting the Plaintiff's allegations as true, Plaintiff has pled claims relating to ongoing and future harm for which injunctive and declaratory relief may be proper.

## IV.     CONCLUSION

For these reasons, Defendants' Motions to Dismiss are granted in part and denied in part. Claims against Defendant Altomare individually will be dismissed due to ineffective service of process, and we substitute the United States Government in place of Defendant Altomare with respect to the contractual interference claim. With respect to Plaintiff's First Amendment and contractual interference claims (Counts I & III), Defendants' Motions will be denied to the extent that AMA seeks non-monetary relief on behalf of itself and its members, but we will grant Defendants' Motions to the extent Plaintiff seeks monetary damages with respect to these same Counts. Finally, we will dismiss Plaintiff's claims for Unfair Labor Practices and Civil Conspiracy (Counts II & IV). An appropriate order follows.

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**